Horace LUCKEY, III, et al.,
Plaintiffs–Appellants,

v.

Joe Frank HARRIS, Governor, et al.,
Defendants–Appellees.

No. 88–8047.

United States Court of Appeals,
Eleventh Circuit.

Nov. 23, 1988.

---

**1.** Appellee's motion to strike portions of appellants' brief is granted.

Neil Bradley, American Civil Liberties Union Foundation, Inc., David A. Webster, Emory University School of Law, Eric G. Kocher, Kocher, Wilson, Korschun & Cobb, Robert B. Remar, Atlanta, Ga., for plaintiffs-appellants.

Alfred L. Evans, Jr., Sr. Asst. Atty. Gen., Atlanta, Ga., for defendants-appellees.

Before VANCE and HATCHETT, Circuit Judges, and SCOTT *, District Judge.

VANCE, Circuit Judge:

This is an appeal from dismissal of a complaint on two alternate grounds: that the eleventh amendment bars relief against the defendants and that the complaint fails to state a claim for which relief could be granted. Appellants, on behalf of a bilateral class consisting of all indigent persons presently charged or who will be charged in the future with criminal offenses in the courts of Georgia and of all attorneys who represent or will represent indigent defendants in the Georgia courts, brought this action under 42 U.S.C. § 1983 (1982) against the following defendants in their official capacities: Joe Frank Harris, the Governor of Georgia, the Honorable Robert J. Noland, Chief Judge of the Douglas Judicial Circuit, the Honorable Joe E. Crumbley, Chief Judge of the Clayton Judicial Circuit, and all Georgia judges responsible for providing assistance of counsel to indigents criminally accused in the Georgia courts. Appellants allege that systemic deficiencies including inadequate resources, delays in the appointment of counsel, pressure on attorneys to hurry their clients' case to trial or to enter a guilty plea, and inadequate supervision in the Georgia indigent criminal defense system deny indigent criminal defendants their sixth amendment right to counsel, their due process rights under the fourteenth amendment, their right to bail under the eighth and fourteenth amendments and equal protection of the laws guaranteed by the fourteenth amendment. Appellants seek an order requiring that appellees meet minimum constitutional standards in the provision of indigent criminal defense services.

On June 24, 1987, the district court granted defendants' motion to dismiss on the grounds that the suit, while nominally against the Governor and state court judges, was in essence a suit against the state of Georgia and therefore was barred by the eleventh amendment. Appellants filed a motion for reconsideration. On December 31, 1987 the court once again granted appellees' motion to dismiss, concluding that even if the eleventh amendment were no bar to appellants' action, the suit failed to state a claim for which relief could be granted. For the reasons stated below, we reverse on both grounds and remand for further proceedings consistent with this opinion.

I.

The threshold issue is whether appellants' suit is barred by the eleventh amendment. The eleventh amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States

---

* Honorable Thomas E. Scott, U.S. District Judge for the Southern District of Florida, sitting by designation.

by Citizens of another State, or by Citizens or Subjects of any Foreign State. U.S. Const. amend. XI. Although this amendment does not expressly prohibit suits in federal court against a state by its own citizens, it has long been interpreted to bar such suits. *See Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

Both parties agree that this suit involves the scope of the exception to the eleventh amendment first stated in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). This case involved a suit against a state attorney general to enjoin him from applying against plaintiffs a state law alleged to be unconstitutional. The Supreme Court held that a suit against an officer of a state directing him to refrain from unconstitutional conduct is not a suit against a state within the meaning of the eleventh amendment. *Id.* at 156, 28 S.Ct. at 452. This exception has been developed over the years to permit prospective relief against state officers in their official capacities to refrain from unconstitutional conduct even though compliance may cost the state money. *See, e.g., Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977).

The district court held that appellants' suit fell outside the scope of the *Young* exception. The court relied on two factors to determine that the officials named in this suit were simply surrogates for the state itself: any decree or order would be enforced against the state and the complaint did not allege that "any defendant, as an individual, has personally undertaken any unconstitutional or wrongful action." The court concluded that the state was the real party in interest and the suit was barred by the eleventh amendment. We address each of these factors separately.

### A.

Appellees assert this suit is in essence against the state of Georgia because its real goal is to obtain increased funding for indigent services and because the state will ultimately bear the cost of any relief ordered against the named defendants. In their complaint appellants seek an order compelling appellees to meet minimum constitutional standards in the provision of indigent defense services. Specifically, they asked the court to order that appellees provide attorneys at probable cause determinations if so requested by indigent defendants, for speedy appointment of counsel at all critical stages in the criminal process, for adequate investigative services and experts, for the adequate compensation of attorneys representing indigents, and for uniform standards governing the representation of indigents to be adopted and maintained. If this relief were granted, it would doubtless result in expense to the state of Georgia.

Cases defining the scope of the *Ex parte Young* exception, however, have focused not on the source or amount of funds required to be expended if relief were granted, but on whether the funds are required to be expended as compensation for *past* wrongdoing by the state or as an "ancillary effect" of compliance with the court order. As the Supreme Court explained in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974),

> State officials, in order to shape their official conduct to the mandate of the Court's decrees, would more likely have to spend money from the state treasury than if they had been left free to pursue their previous course of conduct. Such an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young* ...

*Id.* at 668, 94 S.Ct. at 1358. *See also Milliken v. Bradley,* 433 U.S. at 289, 97 S.Ct. at 2461 (eleventh amendment no bar to court order that state defendants pay one-half costs attributable to education components in school desegregation plan; the *Young* exception "permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury").

Admittedly, "the difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* will not in many instances be that between day and night." *Edelman,*

415 U.S. at 667, 94 S.Ct. at 1357. The touchstone, however, is whether an expenditure is a "necessary result of compliance with decrees which by their terms [are] prospective in nature," *id.* at 668, 94 S.Ct. at 1358, or a goal in itself. *Edelman* demonstrates this distinction. The Supreme Court reversed an order requiring the retroactive payment of benefits found to be wrongfully withheld by Illinois officials from applicants for state-administered aid to the aged, blind and disabled. On appeal the state "concede[d] that *Ex Parte Young* ... is no bar to that part of the District Court's judgment that prospectively enjoined petitioner's predecessors from failing to process applications within the time limits established by the federal regulations." *Id.* at 664, 94 S.Ct. at 1356. The Court concluded, however, that the eleventh amendment did bar the order requiring retroactive payment of benefits because

> [i]t requires payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation to those whose applications were processed on the slower time schedule at a time when petitioner was under no court-imposed obligation to conform to a different standard.

*Id.* at 668, 94 S.Ct. at 1358.

Likewise, in *Papasan v. Allain,* 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), the Court held that while the eleventh amendment did not bar an equal protection clause challenge to the unequal distribution of funds from lands set aside to support local schools, it did bar attempts to require state officials to pay to some local school boards yearly income based on amounts that had been generated by lands set aside to fund local education before the lands were sold by state officials. While the Court recognized that these claims could be similar, it noted that the determining factor is the theory of the relief sought.

> It may be that the current disparity results directly from the same actions in the past that are the subject of the petitioners' trust claims, but the essence of the equal protection allegation is the present disparity in the distribution of the benefits of state-held assets and not the past actions of the State. A remedy to eliminate this current disparity, even a remedy that might require the expenditure of state funds, would ensure " 'compliance *in the future* with a substantive federal-question determination' " rather than bestow an award for accrued monetary liability. *Milliken [v. Bradley],* 433 U.S. at 289, 97 S.Ct. at 2762 (quoting *Edelman,* 415 U.S. at 664, 94 S.Ct. at 1356).

*Papasan v. Allain,* 478 U.S. at 282, 106 S.Ct. at 2942 (emphasis in original).

When this test is applied to the relief appellants seek, it is clear that the eleventh amendment does not bar their suit. Appellants seek an order to compel appellees to provide indigent defense services that meet minimum constitutional standards. While the state ultimately may finance compliance with such an order, this fact is not determinative. Any funds that the state of Georgia may be required to spend if appellants were successful on the merits would be an ancillary effect of future compliance with constitutional standards. Accordingly, we hold that the relief appellants seek falls within the *Ex parte Young* exception to the eleventh amendment's general prohibition of suits brought against a state by its own citizens.

### B.

■ We turn now to two related claims concerning the naming of state officials as defendants in this action. Appellees assert that the *Ex parte Young* exception requires that the defendants must have taken some action personally that violates the Constitution.

Personal action by defendants individually is not a necessary condition of injunctive relief against state officers in their official capacity. All that is required is that the official be responsible for the challenged action. As the *Young* court held, it is sufficient that the state officer sued must, "by virtue of his office, ha[ve] some connection" with the unconstitutional act or

conduct complained of. "[W]hether [this connection] arises out of general law, or is specially created by the act itself, is not material so long as it exists." *Young,* 209 U.S. at 157, 28 S.Ct. at 453. According to the Georgia constitution, the governor is responsible for law enforcement in that state and is charged with executing the laws faithfully. Ga. Const. Art. 5, § 2, ¶ 2. The governor further has the residual power to commence criminal prosecutions, Ga. Code Ann. § 17-1-2 (1982), and has the final authority to direct the Attorney General to "institute and prosecute" on behalf of the state. *Id.* § 45-15-35. Judges are responsible for administering the system of representation for the indigent criminally accused. *Id.* §§ 17-12-4 to -10, 17-12-60. Defendants are therefore appropriate parties against whom prospective relief could be ordered. *See Papasan v. Allain,* 487 U.S. at 282 n. 14, 106 S.Ct. at 2943 n. 14 (Secretary of state responsible for "general supervision" of administration by local school officials of lands set aside for educational purposes properly could be enjoined under *Young* exception in suit alleging violation of equal protection in distribution of funds from land). *See also Fortson v. Dorsey,* 379 U.S. 433, 85 S.Ct. 498, 13 L.Ed.2d 401 (1965) (Georgia Secretary of State sued in apportionment case); *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) (Alabama Secretary of State sued in apportionment case).

■ Appellees further contend that the dismissal should be upheld because there is no "case or controversy" between the parties in this suit. This claim is largely foreclosed by our analysis above. In any event, we conclude that appellants' allegations that they are presently being denied constitutional rights as a direct result of the failure of appellees to furnish counsel in a manner that meets minimum constitutional standards is sufficient to satisfy the Article III requirement of an allegation that they have sustained or are immediately in danger of sustaining some "real and immediate injury" resulting from challenged official conduct. *See United Pub. Workers of America v. Mitchell,* 330 U.S. 75, 88-91, 67 S.Ct. 556, 563-65, 91 L.Ed. 754 (1947).

## II.

■ We next address whether the suit was properly dismissed for failure to state a claim for which relief can be granted under Fed.R.Civ.P. 12(b)(6). On such a motion the complaint should not be dismissed unless it appears "beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim that would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed. 2d 80 (1957); *accord Bradberry v. Pinellas County,* 789 F.2d 1513, 1515 (11th Cir. 1986). Even taking the allegations of the complaint as true, the district court concluded that appellants had failed to state a claim upon which relief could be granted.

> The problem with plaintiffs' claim is that they seek an across-the-board ruling that the Georgia criminal defense scheme systematically denies or *will deny in the future* effective assistance of counsel to the indigent accused.... The Supreme Court, however, has explained that an evaluation of effective assistance is inextricably bound up with the particular facts of a case. Few are the circumstances that a court can declare so compromising that ineffective assistance is essentially inevitable.

(emphasis in original). The district court's ruling clearly indicated that appellants had to prove "an across-the-board future inevitability of ineffective assistance." Taking the facts of the complaint as true, the court concluded that appellants' allegations were insufficient to meet the "ineffective assistance of counsel" standard as set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) and dismissed appellants' complaint.[1]

---

1. The district court did not address whether appellants' eighth amendment and equal protection claims failed to state a claim on which relief could be granted. Accordingly, we confine our analysis to appellants' sixth amendment claims.

We cannot agree that appellants' burden in this action for injunctive relief was to establish that ineffective assistance was inevitable for each of the class members. Accordingly, we reverse.

*Strickland v. Washington* established the test for determining when counsel has rendered ineffective assistance. This test requires that the prisoner show: (1) that the performance of his counsel was deficient, i.e., that he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that the deficient performance by his counsel prejudiced his defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. at 687, 104 S.Ct. at 2064.

This standard is inappropriate for a civil suit seeking prospective relief. The sixth amendment protects rights that do not affect the outcome of a trial. Thus, deficiencies that do not meet the "ineffectiveness" standard may nonetheless violate a defendant's rights under the sixth amendment. In the post-trial context, such errors may be deemed harmless because they did not affect the outcome of the trial. Whether an accused has been prejudiced by the denial of a right is an issue that relates to relief—whether the defendant is entitled to have his or her conviction overturned—rather than to the question of whether such a right exists and can be protected prospectively. *See, e.g., Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (Alabama preliminary hearing in which determination is made if there is sufficient evidence to warrant presenting a case to grand jury is "critical stage" in the state's criminal process at which the accused is entitled to assistance of counsel; remand to determine whether denial of counsel prejudiced defense so as to require new trial); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (post-indictment line-up for purpose of identification is "critical stage" in criminal process at which accused is entitled to assistance of counsel; remand to determine if the introduction of evidence from hearing was harmless error requiring no new trial); *Pugh v. Rainwater*, 483 F.2d 778,

787 (5th Cir.1973) ("The distinction between a pre-trial declaration of a right to a hearing and a post-conviction appeal for reversal on the basis of the absence of such hearing is a pragmatic and sensible distinction.") *aff'd in part, rev'd in part on other grounds sub nom. Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

Where a party seeks to overturn his or her conviction, powerful considerations warrant granting this relief only where that defendant has been prejudiced. The *Strickland* court noted the following factors in favor of deferential scrutiny of a counsel's performance in the post-trial context: concerns for finality, concern that extensive post-trial burdens would discourage counsel from accepting cases, and concern for the independence of counsel. 466 U.S. at 690 These considerations do not apply when only prospective relief is sought.

Prospective relief is designed to avoid future harm. *Swift & Co. v. United States*, 276 U.S. 311, 326, 48 S.Ct. 311, 315, 72 L.Ed. 587 (1928). Therefore, it can protect constitutional rights, even if the violation of these rights would not affect the outcome of a trial. For example, in *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Supreme Court considered the claims of a class of accused individuals detained in Florida jails without a determination of probable cause. The detainees had been granted declaratory and injunctive relief in the court below. On appeal, the Supreme Court affirmed that part of the Court of Appeal's decision declaring that the Florida procedure violated defendants' rights under the fourth amendment because it did not require a timely judicial determination of probable cause as a condition of detention pending trial. *Id.* at 126, 95 S.Ct. at 869. Yet the Court expressly noted that a showing of illegal arrest or detention is not automatic grounds for overturning a subsequent conviction. *Id.* at 119, 95 S.Ct. at 865.

In a suit for prospective relief the plaintiff's burden is to show "the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." *O'Shea v. Littleton*, 414 U.S. 488, 502, 94 S.Ct. 669, 679, 38 L.Ed.2d 674 (1974); *see*

*also, United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). This is the standard to which appellants, as a class, should have been held.

Appellants have alleged that systemic delays in the appointment of counsel deny them their sixth amendment right to the representation of counsel at critical stages in the criminal process, hamper the ability of their counsel to defend them, and effectively deny them their eighth and fourteenth amendment right to bail, that their attorneys are denied investigative and expert resources necessary to defend them effectively, that their attorneys are pressured by courts to hurry their case to trial or to enter a guilty plea, and that they are denied equal protection of the laws. Without passing on the merits of these allegations, we conclude that they are sufficient to state a claim upon which relief could be granted. *See Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Hamilton v. Alabama*, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961). Accordingly, we REVERSE the order of the district court and REMAND for further proceedings consistent with this opinion.