**WOMEN'S EMERGENCY NETWORK, et al., Plaintiffs,**

v.

**Jeb BUSH, et al., Defendants.**

**No. 02–20172–CIV.**

United States District Court, S.D. Florida.

Feb. 15, 2002.

Brigitte Amri, Esq., Priscilla Smith, Esq., Hillary Schwab, Esq., Louis M. Silber, Esq., Silber & Valente, West Palm Beach, FL, for Plaintiff.

Parker D. Thomson, Esq., Carol Licko, Esq., Hogan & Hartson, L.L.P., Miami, FL, Leon St. John, Esq., Palm Beach County Attorney's Office, West Palm Beach, FL, James J. Dean, Esq., Messer, Caparello & Self, P.A., Tallahassee, FL, for Defendant.

## ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction (filed January 15, 2002). Briefing was submitted to the Court on an expedited basis, and a hearing was held on February 1, 2002, at which all parties were represented.

UPON CONSIDERATION of the memoranda and affidavits filed in support of and in opposition to Plaintiffs' Motion, the arguments of counsel at the hearing, and the other pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following order DENYING Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction.

### A. Introduction

This action challenges the constitutionality of Florida's "Choose Life" speciality license plate scheme, as set forth in Fla. Stat. §§ 320.08058(30) and 320.08056(4)(dd) (hereinafter "the Act"). The Act requires the Department of Highway Safety and Motor Vehicles (hereinafter "the Department") to create a specialty license plate bearing the message "Choose Life." The Department charges those who want the specialty plate an annual use fee

of $20. *See* Fla. Stat. § 320.08056(4)(dd). Pursuant to the Act, the Department then distributes the money "annually to each county in the ratio that the annual use fees collected by each county bears to the total fees collected for the plates within the state." *See* Fla. Stat. § 320.08058(30)(b).

The counties are required to distribute the funds generated from the "Choose Life" license plates as follows:

> Each county shall distribute the funds to nongovernmental, not-for-profit agencies within the county, which agencies' services are limited to counseling and meeting the physical needs of pregnant women who are committed to placing their children for adoption. Funds may not be distributed to any agency that is involved or associated with abortion activities, including counseling for or referrals to abortion clinics, providing medical abortion-related procedures, or proabortion advertising, and funds may not be distributed to any agency that charges women for services received.

*See id.* Furthermore, the Act imposes certain restrictions on the use of the funds once distributed, and requires the recipient agencies to "submit an annual audit, prepared by a certified public accountant, to the county."[1] *See id.*

Plaintiffs have alleged that, since the specialty "Choose Life" license plate was released in August 2000, at least 34,134 have been produced and distributed by the Department, and have generated at least $682,674 in revenue. *See id.* at ¶¶ 29–30. In addition, they allege that, in August 2001, $426,639.94 in funds was distributed to the Counties. Furthermore, Plaintiffs allege that at least seven counties have begun distributing the funds from the license plates, and that two are poised to begin distributing funds. These Counties are Brevard, Marion, Hillsborough, Duval, Bay, St. Johns, Okaloosa, Citrus, Miami–Dade, and Palm Beach. Finally, Plaintiffs allege that each of these counties has designated a Catholic organization to distribute the funds to agencies that qualify under the Act.

The three Plaintiffs who challenge the constitutionality of this Act are Women's Emergency Network ("WEN"), Emergency Medical Assistance, Inc. ("EMA"), and Joshua Becker. Plaintiffs WEN and EMA are Miami–Dade County and Palm Beach County agencies, respectively, that provide services to low-income pregnant women and girls. They have alleged that they would like to apply for and receive funds from their respective Counties, pursuant to the Act, "in order to provide for the material needs of women who are committed to placing their newborn children for adoption if they carry their pregnancies to term," but are ineligible because they also engage in referrals to abortion clinics. *See* Complaint, ¶¶ 10–13. Plaintiff Joshua Becker is a citizen of Florida and a resident and taxpayer of Palm Beach County, and "objects to his tax money being used for administration of the Act." *See id.* at ¶ 14. He has also alleged that he "would like to purchase specialty plates expressing his pro-choice views but is unable to do so." *See id.*

Defendants are Jeb Bush, as Governor of the State of Florida; Fred Dickinson,

---

**1.** Specifically, the Act provides: "Agencies that receive the funds must use at least 70 percent of the funds to provide for the material needs of pregnant women who are committed to placing their children for adoption, including clothing, housing, medical care, food, utilities, and transportation. Such funds may also be expended on infants awaiting placement with adoptive parents." It further provides: "The remaining funds may be used for adoption, counseling, training, or advertising, but may not be used for administrative expenses, legal expenses, or capital expenditures." *See* Fla. Stat. § 320.08058(30)(b).

Executive Director of the Florida Department of Highway Safety and Motor Vehicles; and Palm Beach County. Plaintiffs have further requested certification of a defendant class of all Counties of Florida, with Palm Beach County as the class representative; that motion, however, has not yet been fully briefed.

In this action, Plaintiffs have requested, in relevant part, (1) a preliminary injunction enjoining the State and its Counties from distributing the funds pursuant to the Act, during the pendency of this action; (2) a permanent injunction enjoining the enforcement of Fla. Stat. § 320.08058(30); (3) a permanent injunction enjoining the Counties from distributing the funds on the basis of viewpoint; and (4) a permanent injunction enjoining the Counties from delegating their duty of administering the funds to religious organizations. *See* Complaint, pp. 10–11.

This order concerns itself only with the request for a preliminary injunction enjoining the State and its Counties from distributing the funds pursuant to the Act. Notably, Plaintiffs' requested preliminary injunction mainly pertains, not to the more general issue of the constitutionality of state-endorsed "Choose Life" license plates, but to the more narrow issue of what restrictions a state may place on the distribution of proceeds from those plates, and what mechanisms counties may use for the distribution of those proceeds.

The State Defendants, Governor Jeb Bush and Fred Dickinson, have opposed Plaintiffs' right to a preliminary injunction by attacking (1) Plaintiffs' standing to assert the claims in question; (2) the irreparability of Plaintiffs' alleged damages; and (3) the merits of Plaintiffs' claims. Notably, Palm Beach County has taken no position on the ultimate merits of the law suit, but has opposed Plaintiffs' Motion for Preliminary Injunction. Specifically, Palm Beach has claimed that it has not yet distributed any funds received from the State, and that it has not contracted with any agency or entity to disburse the funds. Moreover, Palm Beach County has expressed its willingness to wait until the conclusion of this action to distribute the funds it has received. On this basis, Palm Beach County has argued that Plaintiffs have failed to show any threat of irreparable harm, and therefore, that they are not entitled to the preliminary injunction they seek.

## B. Preliminary Injunction Standard

■ A district court is reposed with discretionary power to grant preliminary injunctive relief. *See Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154 (11th Cir.1990); *Tutor Time Child Care Systems, Inc. v. Franks Investment Group, Inc.*, 966 F.Supp. 1188, 1997 WL 306874 (S.D.Fla. June 4, 1997). The court's discretion, however, is not unbridled. "It must exercise that discretion in light of what we have termed the 'four prerequisites for the extraordinary relief of preliminary injunction.'" *Canal Auth. of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974) (quoting *Allison v. Froehlke*, 470 F.2d 1123, 1126 (5th Cir.1972)).

■ Because a preliminary injunction is a "drastic remedy," the plaintiff bears the burden to clearly establish each of the four criteria for relief. *International Assoc. of Machinists and Aerospace Workers, AFL–CIO v. Compania Mexicana de Aviacion, S.A.*, 998 F.Supp. 1442 (S.D.Fla. 1998). These four criteria are: (1) whether there is a substantial threat of irreparable harm to the plaintiff if the injunction is not issued; (2) whether the threatened harm to the plaintiff outweighs the potential harm to the defendant from issuance of the injunction; (3) whether there is a substantial likelihood that the plaintiff will ultimately prevail on the merits; and (4)

whether the granting of a preliminary injunction will serve the public interest. *See Haitian Refugee Ctr., Inc. v. Nelson,* 872 F.2d 1555, 1561–62 (11th Cir.1989), *aff'd sub nom., McNary v. Haitian Refugee Ctr., Inc.,* 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991).

■ Of these four criteria, the principal and overriding criterion is whether there exists a substantial threat that the movant will suffer irreparable harm if a preliminary injunction is not granted before a trial on the merits takes place. *See Sampson v. Murray,* 415 U.S. 61, 88, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). The threatened harm to the movant is confined to that which might occur in the interval between the hearing on the motion for preliminary injunction and a trial on the merits. *See United States v. Lambert,* 695 F.2d 536, 540 (11th Cir.1983). Furthermore, a preliminary injunction is not warranted if the movant has an adequate remedy at law in the form of a money judgment. *See Ferrero v. Associated Materials, Inc.,* 923 F.2d 1441, 1449 (11th Cir. 1991).

## C. Plaintiffs' Motion for Preliminary Injunction

In Plaintiffs' Motion for Preliminary Injunction, Plaintiffs request, as discussed, that the Defendants be enjoined from distributing the proceeds from the specialty "Choose Life" license plate during the pendency of this action. Plaintiffs' complaints regarding the distribution of funds are essentially two-fold. First, Plaintiffs have raised an as applied challenge to the Counties' alleged delegation of their distribution responsibilities to Catholic organizations; this is an as applied challenge, because the Act does not expressly provide for such delegation. Second, Plaintiffs have raised a facial challenge to the Act's prohibition on distributing funds to agencies that provide abortion-related services.

■ Before reaching the merits of these facial and as applied challenges, however, the Court must consider which parties would be enjoined under Plaintiffs' requested injunction, and whether this Court has the authority to enjoin those parties, as this action currently stands. Notably, the only County that has been named is Palm Beach County. Accordingly, this Court has no authority to enjoin directly the activities of any county other than Palm Beach. Therefore, the injunction, if warranted, could be directed only toward Palm Beach County and/or the State Defendants.

## I. Palm Beach County

■ As discussed, Plaintiffs have alleged that Palm Beach County is planning to, or has already, delegated its fund disbursement responsibilities to a Catholic organization. Plaintiffs argue that such delegation violates the First Amendment's Establishment Clause and the Fourteenth Amendment's Due Process Clause. However, even if such delegation would constitute a constitutional violation, a preliminary injunction cannot be entered based on allegations alone. The Court must first consider whether Plaintiffs have demonstrated a substantial likelihood that Palm Beach has taken or is about to take the alleged actions which, according to Plaintiffs, would violate their constitutional rights.

■ The Court finds that Plaintiffs have produced no evidence of imminent action by Palm Beach County. In fact, Palm Beach has indicated that it has not yet distributed any of the funds it has received from the State, has not contracted with any organization to distribute the funds, and will not do so until this action is concluded. In response, Plaintiffs argue that "voluntary cessation of allegedly illegal conduct ... does not make the case moot." *See United States v. W.T. Grant*

*Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *see also Chicago Teachers Union, Local No. 1, AFT, AFL–CIO v. Hudson,* 475 U.S. 292, 305 n. 14, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986); *United States v. Concentrated Phosphate Export Ass'n,* 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968). While Plaintiffs are correct in this general statement of law, this presupposes that some evidence has been offered that the allegedly illegal conduct has been, or was about to be, implemented. No such evidence was offered.

In short, because Plaintiffs have not come forward with evidence that Palm Beach County is, in fact, delegating, or planning to delegate, its disbursement responsibilities to a Catholic organization in spite of its representations to the contrary, an injunction may not be entered against Palm Beach County. Therefore, it would be improper for the Court to consider, in the abstract, whether the delegation of disbursement responsibilities to Catholic organizations would violate Plaintiffs' constitutional rights.

## II.  The State Defendants

The injunction against the State Defendants, sought by Plaintiffs, would have essentially two components. First, the State Defendants would be enjoined from distributing any additional funds to the Counties during the pendency of this action. Second, the injunction would direct the State Defendants to prohibit the Counties from any further disbursement of the funds already received from the State. Each component will be addressed separately.

### a.  The State's Distribution of License Plate Funds to the Counties

■ First, Plaintiffs have requested that the State Defendants be enjoined from distributing any additional funds to the Counties during the pendency of this action. However, even if further distribution of funds to the Counties would violate Plaintiffs' constitutional rights, Plaintiffs are not entitled to a preliminary injunction unless they demonstrate that such distribution is imminent. Importantly, the State Defendants offered evidence showing that the funds are distributed from the state to the Counties on an annual basis; the last distribution was made in August 2001, and the next distribution will not be until July 2002. *See* Affidavit of Carl Ford, Director of the Division of Motor Vehicles of the Florida Department of Highway Safety and Motor Vehicles.

Plaintiffs have not refuted this evidence. Rather, Plaintiffs contend that it is appropriate to enjoin the July distribution now, in February, because this action will not be concluded by July. However, an injury, at least five months from realization, is simply not "imminent" under these circumstances. It is too soon to assume that this action will not be substantially resolved by July. At the very least, by the time the alleged injury is imminent, the parties will have had the opportunity to conduct discovery, and the Court will be better situated to resolve the issues on the merits. Furthermore, the other Florida counties, which would clearly be affected by the injunction, should ideally be represented, either as class members or as named parties, before the Court considers the question of further distribution to the Counties.

In short, because Plaintiffs have not shown a substantial likelihood of imminent harm, the Court concludes that the state should not be enjoined from distributing additional funds to the Counties.

### b.  The Counties' Disbursement of Funds Already Received

■ Lastly, Plaintiffs contend that the unnamed Florida counties may be enjoined from disbursement of funds already received from the State, vis a vis an in-

junction against the *State Defendants.* According to Plaintiffs, there are two frameworks under which this could occur. First, the Court could enter an injunction directing the State Defendants to prohibit the Counties from any further disbursement of funds to recipients. Second, the Court could simply enjoin the State Defendants from disbursing any license plate funds to recipients, and, according to Plaintiffs, that injunction would also operate on the Counties. However, the Court concludes that it quite clearly does not have the authority to enter such an injunction under either framework.

In *Luckey v. Harris,* the plaintiffs sought an order compelling state officials to meet minimum constitutional standards in the provision of indigent defense services. *See Luckey v. Harris,* 860 F.2d 1012 (11th Cir.1988). On appeal, the Eleventh Circuit discussed when objective relief may be sought against state officers in their official capacity. *See id.* The court noted that, while the state defendant need not have taken "personal action," the state official enjoined must "be responsible for the challenged action," or, "by virtue of his office, have some connection with the unconstitutional act or conduct complained of." *Id.* at 1015–16.

In this case, there is no evidence that the State Defendants have such a "connection" with the Counties' allegedly unconstitutional disbursement of funds under the Act. Once the funds have been distributed to the Counties, the disbursement responsibilities clearly rest with the Counties, and the Governor and/or Executive Director do not retain control over the Counties or the funds. Therefore, this Court could not control the Counties' disbursement of funds by enjoining the State Defendants.

In an effort to show that the State Defendants do have control over the Counties' disbursement of license plate funds, Plaintiffs rely on Fla. Stat. § 320.08062. This statute provides that "[a]ll organizations that receive annual use fee proceeds from the department are responsible for ensuring that proceeds are used in accordance with ss. 320.08056 and 320.0805," and also requires that certain "annual attestations" be made by the recipients. Fla. Stat. § 320.08062(1). The statute further mandates that, within ninety days of receiving the organization's audit or attestation, the Department "shall determine which recipients of revenues from specialty license plate annual use fees have not complied with" the requirements of the statute. Fla. Stat. § 320.08062(2).

Plaintiffs contend that this structure—under which the Department maintains certain supervisory powers over fund-disbursement—establishes a sufficient connection between the State Defendants and the Counties' disbursement of funds, such that this Court could control the Counties' disbursement by enjoining the State Defendants. This Court does not agree. In the event of noncompliance by a recipient, the statute directs only that the Department "*discontinue* the distribution of revenues to the organization until the department determines that the organization has complied." Fla. Stat. § 320.08062(2) (emphasis added). The statute does *not* call for already distributed funds to be frozen or returned. *Id.* This provision demonstrates the State Defendants' lack of control over, or connection to, already-distributed funds.[2]

---

**2.** Plaintiffs further rely on *Majchszak v. Schmidt,* 358 F.Supp. 1165 (E.D.Wis.1973), *aff'd,* 506 F.2d 1403 (7th Cir.1974). In that case, the Court entered an injunction against the State Welfare Department, and directed the State Welfare Department to mail a copy of the injunction to the director of each county welfare department, so that they would be bound by the Court's injunction. *Id.* at 1170.

Accordingly, this Court may not, by entering an injunction against the State Defendants, enjoin unnamed and unrepresented Counties from disbursing funds already received from the State.

### D.  Conclusion

Because this Court has concluded that it cannot enter the injunction requested by Plaintiffs against any of the named defendants, it would be premature to consider Plaintiffs' as-applied and facial challenges of the Act at this time.

Accordingly, for the foregoing reasons, it is

ORDERED AND ADJUDGED that Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction (filed January 15, 2002) is DENIED.

However, this case is not persuasive authority. The central issue in the case was the interpretation of certain welfare statutes, but the court did not discuss the issue of whether the State Welfare Department controlled the county welfare department's interpretation of the statutes. If the State Welfare Department did maintain control in these matters, the case would clearly be distinguishable.