**KENNY A., by his next friend Linda WINN, et al., Plaintiffs,**

v.

**Sonny PERDUE, et al., Defendants.**

**No. CIV.A. 1:02–CV–1686–MHS.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 8, 2005.

---

Jeffrey O. Bramlett, Corey Fleming Hirokawa, Bondurant Mixson & Elmore, Jane Garrett Okrasinski, Don. C. Keenan, Keenan's Kids Law Center, Atlanta, GA, Ira P. Lustbader, PHV, Jeffrey K. Powell, PHV, Stacy F. Antonucci, PHV, Sarah Hechtman, PHV, Erik S. Pitchal, PHV, New York City, for Plaintiff.

John C. Jones, Kathleen Mary Pacious, Eddie Snelling, Jr., Thurbert E. Baker, Office of State Attorney General, Mark Howard Cohen, Troutman Sanders, Willie Jake Lovett, Jr., Rolesia Butler Dancy, Patricia A. Chandler, Overtis Hicks Brantley, Office of Fulton County Attorney, Atlanta, GA, Elizabeth B. Taylor, Winston A. Denmark, Vivica Mitchell Brown, Charles George Hicks, William J. Linkous, III, Office of Dekalb County Attorney, Jefferson James Davis, Davis & Davis, Decatur, GA, Sarah Hechtman, PHV, Children's Rights, Inc., New York City, for Defendant.

## ORDER

SHOOB, Senior District Judge.

This action is before the Court on motions for summary judgment filed by defendants Fulton County and DeKalb County. For the following reasons, the Court denies both motions.

*Background*

This is a class action brought on behalf of foster children in Fulton and DeKalb Counties. In addition to plaintiffs' claims against the state agencies and state officials responsible for operating Georgia's foster care system, plaintiffs also assert a claim against Fulton County and DeKalb County (County Defendants) for their alleged failure to provide foster children with adequate and effective legal representation in deprivation[1] and termination-of-parental-rights (TPR) proceedings.

Specifically, plaintiffs allege that the inadequate number of child advocate attorney positions funded by County Defendants results in extremely high caseloads for the attorneys, making effective representation of the class of plaintiff foster children structurally impossible in all proceedings before the juvenile courts where deprivation is alleged. First Am. Compl. ¶¶ 99–103. In Count XIII of their First Amended Complaint, plaintiffs allege that this failure to provide adequate and effective legal representation violates plaintiffs' due process rights under the Georgia Constitution and, with respect to TPR proceedings, their statutory rights under O.C.G.A. § 15–11–98(a).[2] *Id.* ¶¶ 218–19. To correct these alleged deficiencies, plaintiffs pray for class-wide prospective injunctive and declaratory relief. *Id.* ¶¶ 185–89, 193(f); Prayer for Relief ¶¶ C(11) and D.

---

1. Under Georgia law, a "deprived child" is one who:

 (A) Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals;

 (B) Has been placed for care or adoption in violation of law;

 (C) Has been abandoned by his or her parents or other legal custodian; or

 (D) Is without a parent, guardian, or custodian.

O.C.G.A. § 15–11–2(8).

2. In response to County Defendants' motions for summary judgment, plaintiffs also allege violation of a statutory right to counsel in deprivation proceedings under O.C.G.A. § 15–11–6(b).

Deprivation cases consist of a series of hearings and review proceedings that take place over the course of a child's stay in the Georgia foster care system. These include (1) the initial 72–hour detention hearing, where the judge must determine whether there are reasonable grounds to believe that the child is deprived and whether the child should be returned to his or her parents or retained in the custody of the Division of Family and Children Services (DFCS) until the adjudicatory hearing occurs; (2) the adjudicatory hearing, where the juvenile court hears evidence and makes a determination on the merits of whether a child is deprived; (3) the dispositional hearing, where the juvenile court must determine what is to be done with the deprived child, including where and with whom the child is to be placed at that time; and (4) periodic review proceedings conducted either by the court or a citizen review panel. *See* O.C.G.A. §§ 15–11–39, 15–11–54 through 15–11–56, and 15–11–58(k). In addition, some deprivation cases also include TPR proceedings. *See* O.C.G.A. §§ 15–11–94 through 15–11–106.

In both Fulton and DeKalb Counties, child advocate attorneys are responsible for representing allegedly deprived children in all of these proceedings. Fulton County employs four child advocate attorneys, while DeKalb County employs five.[3] As of March 2004, there were 1,757 plaintiff foster children in custody in Fulton County and 914 in DeKalb County. This equates to a caseload of 439.2 child clients per attorney in Fulton County, and 182.8 child clients per attorney in DeKalb County. The American Bar Association, the United States Department of Health and Human Services, and the National Association of Counsel for Children (NACC) have each established standards of practice for lawyers who represent children in abuse and neglect cases. In light of the minimum requirements for effective advocacy set forth in these standards, the NACC recommends that no child advocate attorney should maintain a caseload of over 100 individual child clients at a time.

*Summary Judgment Standard*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is "no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." In *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court held that this burden could be met if the moving party demonstrates that there is "an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. At that point, the burden shifts to the non-moving party to go beyond the pleadings and present specific evidence giving rise to a triable issue. *Id.* at 324, 106 S.Ct. 2548.

The Court, however, must construe the evidence and all inferences drawn from the evidence in the light most favorable to the non-moving party. *WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988). Moreover, because the summary judgment standard mirrors that required for a judgment as a matter of law, summary judgment is not appropriate unless "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citation omitted).

*Discussion*

I. *Summary of the Parties' Contentions and the Court's Conclusions*

Notwithstanding the large caseloads carried by child advocate attorneys, County

---

**3.** When this suit was filed, DeKalb County employed only two child advocate attorneys.

Defendants contend that they are entitled to summary judgment on plaintiffs' claim that they fail to provide adequate and effective legal representation to plaintiff foster children. First, County Defendants argue that, although they voluntarily provide representation to children in all deprivation proceedings, Georgia law requires provision of counsel to children only in TPR proceedings, and that plaintiff foster children therefore have no right to effective legal representation in general deprivation proceedings. Second, County Defendants contend that plaintiffs are not entitled to injunctive relief because (1) they have failed to show any irreparable injury arising from the Counties' alleged failure to provide effective assistance of counsel, and (2) they have an adequate legal remedy for any ineffective assistance in the form of either State Bar disciplinary proceedings or private actions for damages against the child advocate attorneys. Third, County Defendants argue that declaratory relief is inappropriate because state law clearly affords plaintiff foster children a right to counsel only in TPR proceedings, so there is no uncertainty as to their legal rights. Finally, County Defendants argue that the appropriate level of funding for child advocate attorneys is a legislative function that should not be interfered with by the Court.

In response, plaintiffs argue that they have both a statutory and a constitutional right to counsel in all deprivation cases, not just TPR proceedings, and that this right includes the right to effective assistance of counsel. Plaintiffs also contend that they have satisfied the irreparable harm requirement for injunctive relief because there is sufficient evidence in the record to create a genuine issue of fact as to whether they are receiving, or face a substantial risk of receiving, ineffective assistance of counsel. Specifically, plaintiffs cite evidence that child advocate attorneys' caseloads in both Fulton and DeKalb Counties are substantially above the 100 individual clients at a time recommended by the NACC, and that these excessive caseloads prevent them from carrying out their basic professional responsibilities. Plaintiffs also cite testimonial and documentary evidence, including child advocate attorney files for the named plaintiffs, showing that child advocates are providing ineffective assistance of counsel. Plaintiffs also argue that, contrary to County Defendants' argument, the filing of a Bar complaint is not an adequate legal remedy because the Georgia Bar Association has no authority to award class-wide injunctive or declaratory relief aimed at structural reform. Moreover, plaintiffs argue, it is not the incompetence of individual attorneys that is the problem, but rather systemic problems in the Fulton and DeKalb systems, specifically underfunding and the resultant excessive caseloads. Finally, plaintiffs contend that they have established the need for declaratory relief in order to clarify whether they have the statutory and constitutional rights to effective assistance of counsel that they claim.

The Court concludes that plaintiff foster children have both a statutory and a constitutional right to counsel in all deprivation proceedings, including but not limited to TPR proceedings. The Court further concludes that plaintiffs have presented sufficient evidence to create a genuine issue for trial as to whether they are threatened with irreparable harm because they are receiving, or face a substantial risk of receiving, ineffective assistance of counsel in such proceedings. The Court rejects County Defendants' argument that plaintiffs have an adequate legal remedy in the form of State Bar complaints or lawsuits filed against individual child advocate attorneys because such actions cannot remedy the systemic deficiencies cited by plaintiffs. The Court concludes that the parties' sharp dispute over whether plain-

tiffs have a right to counsel in deprivation proceedings, and whether that right is being violated, clearly presents a live controversy for which declaratory relief is appropriate. Finally, the Court rejects County Defendants' argument that only the legislature has the authority to correct this problem. If plaintiffs prove their case at trial, then this Court has not only the authority but the obligation to grant appropriate injunctive relief.

## II. Statutory Right to Counsel

■ The parties agree that plaintiff foster children have a statutory right to counsel in TPR proceedings, as set out in O.C.G.A. § 15–11–98(a).[4] The parties, however, dispute whether there is a statutory right to counsel in general deprivation proceedings. Plaintiffs contend that such a right arises under O.C.G.A. § 15–11–6(b). The Court agrees.

Georgia Code section 15–11–6(b) provides in pertinent part as follows:

> *Right to Legal Representation.* Except as otherwise provided under this article, a party is entitled to representation by legal counsel at all stages of any proceedings alleging delinquency, unruliness, incorrigibility, or deprivation and if, as an indigent person, a party is unable to employ counsel, he or she is entitled to have the court provide counsel for him or her. . . . Counsel must be provided for a child not represented by the child's parent, guardian, or custodian. If the interests of two or more parties conflict, separate counsel shall be provided for each of them.

O.C.G.A. § 15–11–6(b). This statute makes clear, at the very least, that a child in a deprivation proceeding is entitled to counsel if his or her parent, guardian, or custodian does not attend. In addition, because a child in a deprivation proceeding is a "party" to the proceeding,[5] the final sentence of the statute means that, even if the child's parent, guardian, or custodian does attend the proceeding, if there is a conflict between the child and the parent, guardian, or custodian, then the child is entitled to separate counsel.

The only question, then, is under what circumstances such a conflict exists. In answering this question, the Court is guided by the Georgia Code's direction that statutory provisions governing juvenile proceedings "shall be liberally construed to the end . . . [t]hat children whose well-being is threatened shall be assisted and protected . . . ." O.C.G.A. § 15–11–1(1). Applying this principle, the Attorney General of Georgia has found that there is an "inherent conflict of interests" between a child and his parent or caretaker in a deprivation proceeding. 1976 Op. Att'y Gen. No. 76–131 at 237. Given the fact that it is the parent or caretaker who is alleged to have abused or neglected the child, the Court finds the Attorney General's opinion persuasive. *See Campbell v. Poythress*, 216 Ga.App. 834, 836, 456 S.E.2d 110 (1995)(recognizing Georgia Attorney General opinion as persuasive au-

---

4. Section 15–11–98(a) provides: "In any proceeding for terminating parental rights or any rehearing or appeal thereon, the court shall appoint an attorney to represent the child as the child's counsel and may appoint a separate guardian ad litem or a guardian ad litem who may be the same person as the child's counsel."

5. *See McBurrough v. Dep't of Human Res.,* 150 Ga.App. 130, 131, 257 S.E.2d 35

(1979)("Under our juvenile code, all parties, including the child, should be represented by an attorney"); *see also* O.C.G.A. § 15–11–9(b)(referring to child as a "party" to a deprivation proceeding). In light of this authority, the Court rejects County Defendants' argument that the statute's separate references to the "child" mean that the child should not be deemed a party to the proceeding.

thority). Accordingly, the Court concludes that in a deprivation proceeding there is an inherent conflict of interests between the child and his or her parent, guardian, or custodian, which requires appointment of separate counsel for the child pursuant to O.C.G.A. § 15–11–6(b).[6]

County Defendants' argument that this interpretation of O.C.G.A. § 15–11–6(b) conflicts with O.C.G.A. § 15–11–9(b) is without merit. The latter statute provides in part that the juvenile court "shall appoint a guardian ad litem for a child who is a party to the [deprivation] proceeding if the child has no parent, guardian, or custodian appearing on the child's behalf or if the interests of the parent, guardian, or custodian appearing on the child's behalf conflict with the child's interests or in any other case in which the interests of the child require a guardian." O.C.G.A. § 15–11–9(b). There is no conflict, however, in requiring the appointment of both an attorney and a guardian ad litem for the child. Indeed, the two Code sections expressly *require* the appointment of *both* an attorney and a guardian ad litem in cases where the child is not represented by his or her parent, guardian, or custodian. *Compare* O.C.G.A. § 15–11–6(b)("Counsel *must* be provided for a child not represented by the child's parent, guardian, or custodian")(emphasis added); *and* O.C.G.A. § 15–11–9(b)("The court . . . *shall* appoint a guardian ad litem for a child who is a party to the proceeding if the child has no parent, guardian, or custo-

dian appearing on the child's behalf. . . .")(emphasis added).

Clearly, therefore, the legislature did not intend the appointment of a guardian ad litem as a substitute for the appointment of counsel. *See also* O.C.G.A. § 15–11–98(a)(providing for appointment of both an attorney and a guardian ad litem for child in TPR proceeding). Thus, there is no conflict created by construing Section 15–11–6(b) to require the appointment of separate counsel for the child in conflict of interest situations simply because Section 15–11–9(b) requires appointment of a guardian ad litem in the same situations.

### III. *Constitutional Right to Counsel*

 Even if there were not a statutory right to counsel for children in deprivation cases and TPR proceedings, the Court concludes that such a right is guaranteed under the Due Process Clause of the Georgia Constitution, Art. I, § 1, ¶ 1. It is well settled that children are afforded protection under the Due Process Clauses of both the United States and Georgia Constitutions and are entitled to constitutionally adequate procedural due process when their liberty or property rights are at stake. *See, e.g., Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)(lack of adequate procedures used by school in suspending students violated due process); *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (holding that minors have due process right to counsel in delinquency proceedings); *K.E.S. v.*

---

**6.** Even after the Division of Family and Children Services (DFCS) has assumed custody of the child, there continues to be a conflict of interests between the child and DFCS, which precludes the attorneys who represent DFCS from also representing the child. This is true because the institutional concerns of DFCS may conflict with the needs of the deprived child. For example, there is evidence that a shortage of family foster homes in Fulton and

DeKalb Counties has lead DFCS to place children in inappropriate and overcrowded homes, to shuffle children from one placement to another, and to overuse institutional placements. Because such conflicts between the broad programmatic needs of DFCS and the specific needs of the individual child may arise in every case, children are entitled to representation by separate counsel throughout the course of the deprivation proceedings.

*Georgia,* 134 Ga.App. 843, 847, 216 S.E.2d 670 (1975)(recognizing minors' right to counsel established in *In re Gault* ). The question, therefore, is whether plaintiff foster children have liberty or property interests at stake in deprivation and TPR proceedings, and, if so, what process is due when those interests are threatened.

The Court finds that children have fundamental liberty interests at stake in deprivation and TPR proceedings. These include a child's interest in his or her own safety, health, and well-being, as well as an interest in maintaining the integrity of the family unit and in having a relationship with his or her biological parents. On the one hand, an erroneous decision that a child is not deprived or that parental rights should not be terminated can have a devastating effect on a child, leading to chronic abuse or even death. On the other hand, an erroneous decision that a child is deprived or that parental rights should ·be terminated can lead to the unnecessary destruction of the child's most important family relationships.

Furthermore, a child's liberty interests continue to be at stake even after the child is placed in state custody. At that point, a "special relationship" is created that gives rise to rights to reasonably safe living conditions and services necessary to ensure protection from physical, psychological, and emotional harm. *See Taylor v. Ledbetter,* 818 F.2d 791, 795 (11th Cir. 1987); *LaShawn A. v. Dixon,* 762 F.Supp. 959, 993 (D.D.C.1991). Thus, a child's fundamental liberty interests are at stake not only in the initial deprivation hearing but also in the series of hearings and review proceedings that occur as part of a deprivation case once a child comes into state custody.

Given the liberty interests at stake, the question becomes what process is constitutionally required to safeguard those interests. To determine what process is due

under the Due Process Clause of the Georgia Constitution, Georgia courts apply the three-part federal test enunciated in *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976):

> [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*See Hood v. Carsten,* 267 Ga. 579, 580–81, 481 S.E.2d 525 (1997). Applying the *Mathews* test to this case, the Court concludes that plaintiff foster children have a right to counsel in deprivation and TPR proceedings under the Due Process Clause of the Georgia Constitution.

First, the Court rejects County Defendants' contention that in deprivation and TPR proceedings, "a child's liberty interest is not at stake because no matter the result, they are not at risk of losing any liberty." Br. in Supp. of Fulton County's Mot. for Summ. J. at 21. This argument completely ignores the child's fundamental liberty interests in health, safety, and family integrity which, as discussed above, are clearly at stake in such proceedings. The Court also rejects County Defendants' argument that deprivation and TPR proceedings present no threat to children's physical liberty. To the contrary, the evidence shows that foster children in state custody are subject to placement in a wide array of different types of foster care placements, including institutional facilities where their

physical liberty is greatly restricted. Indeed, plaintiffs have pointed to evidence that foster children are often forced to live in such institutional settings because suitable family foster homes are not available. The Court concludes that the private liberty interests at stake support a due process right to counsel in deprivation and TPR proceedings.

Second, the Court finds that there is a significant risk that erroneous decisions will be made during the course of deprivation and TPR proceedings. As an initial matter, the standards employed by juvenile courts in deprivation and TPR proceedings allow wide room for judicial discretion and thus for subjective determinations. *See In the Interest of Z.B.,* 252 Ga.App. 335, 339, 556 S.E.2d 234 (2001)("In determining how the interest of the child is best served, the juvenile court is vested with a broad discretion which will not be controlled in the absence of manifest abuse"). Such "imprecise substantive standards that leave determinations unusually open to the subjective values of the judge" serve "to magnify the risk of erroneous factfinding." *Santosky v. Kramer,* 455 U.S. 745, 762, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). In addition, plaintiffs have pointed to strong empirical evidence that DFCS makes erroneous decisions on a routine basis that affect the safety and welfare of foster children.

Contrary to County Defendants' argument, juvenile court judges, court appointed special advocates (CASAs), and citizen review panels do not adequately mitigate the risk of such errors. Judges, unlike child advocate attorneys, cannot conduct their own investigations and are entirely dependent on others to provide them information about the child's circumstances. Similarly, citizen review panels must rely on facts presented to them by state and county personnel, including local DFCS offices. As a result, their reviews are only as good as the information provided to them by DFCS and other state and local agencies. CASAs are also volunteers who do not provide legal representation to a child. Moreover, CASAs are appointed in only a small number of cases. The Court concludes that only the appointment of counsel can effectively mitigate the risk of significant errors in deprivation and TPR proceedings.

Finally, the Court must consider the government's interest, including the function involved and the fiscal and administrative burdens that a right to counsel would entail. In this case, the function involved is that of the state as *parens patriae,* which refers to "the state in its capacity as provider of protection to those unable to care for themselves." Black's Law Dictionary 1144 (8th ed.2004); *see Blackburn v. Blackburn,* 249 Ga. 689, 692 n. 5, 292 S.E.2d 821 (1982)(The basis of this doctrine [of *parens patriae* ] is that the state has a legitimate interest in protecting those individuals unable to protect themselves). As *parens patriae,* the government's overriding interest is to ensure that a child's safety and well-being are protected. *See Williams v. Crosby,* 118 Ga. 296, 298, 45 S.E. 282 (1903)("[T]he parens patriae must protect the helpless and the innocent"). As discussed above, such protection can be adequately ensured only if the child is represented by legal counsel throughout the course of deprivation and TPR proceedings. Therefore, it is in the state's interest, as well as the child's, to require the appointment of a child advocate attorney. This fundamental interest far outweighs any fiscal or administrative burden that a right to appointed counsel may entail.

## IV. *Injunctive Relief*

■ The right to counsel, of course, means the right to *effective* counsel. *See*

*Evitts v. Lucey,* 469 U.S. 387, 395, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)(quoting *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970))("It has long been recognized that the right to counsel is the right to the effective assistance of counsel"); *Nicholson v. Williams,* 203 F.Supp.2d 153, 239 (E.D.N.Y.2002)("The right to appointed counsel when necessary for due process is a right to effective counsel"). County Defendants argue that plaintiffs have failed to present sufficient evidence of ineffective assistance of counsel to support issuance of an injunction. The Court disagrees.

■■■ First, it is important to note that in a class action like this one, which seeks only prospective injunctive and declaratory relief to redress institutional deficiencies in the provision of counsel, class members need not "establish that ineffective assistance was inevitable for each of the class members." *Luckey v. Harris,* 860 F.2d 1012, 1017 (11th Cir.1988). Instead, class members need only meet the traditional standard for the application of equitable relief, namely, a "likelihood of substantial and immediate irreparable injury" if relief is not granted, and "the inadequacy of remedies at law." *Id.* Evidence of "systemic" deficiencies, such as inadequate resources for appointed counsel, is sufficient to meet this standard. *Id.* at 1018; *see also Nicholson,* 203 F.Supp.2d at 240 ("[W]here the state imposes systemic barriers to effective representation, prospective injunctive relief without individualized proof of injury is necessary and appropriate"). In this case, plaintiffs have presented evidence that meets the *Luckey* standard, thus creating a genuine issue of material fact as to whether they are receiving, or face a substantial risk of receiving, ineffective assistance of counsel.

Plaintiffs cite deposition testimony and documentary evidence showing that effective assistance of counsel by a child advocate attorney requires that he or she carry out certain minimum legal tasks as part of the representation. These tasks include meeting with the child prior to court hearings and when apprised of emergencies ·or significant events impacting the child; conducting investigations and discovery, including interviewing individuals involved with the child, such as caseworkers and foster parents, and reviewing all judicial, medical, social services, educational, and other records pertaining to the child; evaluating the child's need for particular services; monitoring the implementation of all court orders; participating in all hearings; and filing all relevant motions and appeals.

Plaintiffs also cite the NACC recommendation that, in order to perform these essential tasks, a child advocate attorney should represent no more than 100 individual clients at a time. The evidence shows that this recommendation is based on the assumption that a child advocate attorney will spend an average of 20 hours representing each child and will work 2000 hours in a year. The recommended caseload limit is meant to apply regardless of how many support staff an attorney might have and assumes that child advocate attorneys are not required to perform non-legal, administrative tasks. Based on his extensive experience in the child welfare area and his participation in the development of the NACC caseload limit, NACC Executive Director Marvin Ventrell testified that a child advocate attorney could not possibly provide effective representation if the attorney had a number of clients significantly above 100, and certainly not if the attorney had a caseload of 200 clients. The evidence shows that each of the four child advocate attorneys in Fulton County represent almost 450 clients, while the five child advocate attorneys in DeKalb County each represent approximately 200 clients.

In addition, plaintiffs have presented testimonial and documentary evidence showing that Fulton and DeKalb Counties' child advocate attorneys are overwhelmed by their caseloads and cannot provide effective representation to their child clients. Mary Hermann, a Fulton County child advocate attorney, testified that the only thing she does in every case is read the initial deprivation petition, that she does not meet with all of her clients, that meeting with a child client is purely "aspirational," and that she does not know how many children she currently represents or how many children her office currently represents. (Hermann Dep. at 39, 58, 47, 128.) Dorothy Murphy, a DeKalb County child advocate attorney, testified that DeKalb's child advocates office has been providing inadequate representation since "the year it was formed" and admitted that she provided inadequate assistance to the plaintiffs in this case. (Murphy Dep. at 154, 255, 258.) She further testified that she had "failed to personally meet or speak with 90 percent of [her] own clients" (*id.* at 258), and that there are cases where no one ever reviewed the medical, social service, education, or other records for a child, met with the foster care provider, or even met with the child. (*Id.* at 88, 91–93.) She also testified that because of her caseload, she often does not have time to investigate whether her child client is receiving appropriate medical or social services or to monitor whether her child client is in a safe foster care placement. (*Id.* at 91, 94.) In fact, she admitted, "I don't know where a lot of the children that I represent are." (*Id.* at 261.)

Plaintiffs also point to evidence from the named plaintiffs' own child advocate attorney files. This evidence shows that the child advocate attorneys often failed to meet with their clients, failed to monitor compliance with court orders, and failed to ensure that their clients' foster care placements were safe and appropriate. All of this evidence is more than sufficient to create a genuine issue for trial as to whether plaintiff foster children, including the named plaintiffs, are receiving, or face a substantial risk of receiving, ineffective assistance of counsel.

■ Plaintiffs have also shown that they have no adequate remedy at law. Contrary to County Defendants' argument, filing a complaint with the State Bar is not an adequate legal remedy. The State Bar has authority only to discipline individual attorneys, not to award the type of classwide relief that plaintiffs seek. Given the evidence showing that the ineffective assistance problem arises not from personal deficiencies in individual attorneys but from systemic problems in the Fulton and DeKalb County child welfare systems, such a limited remedy is totally inadequate. For the same reason, malpractice lawsuits filed against individual attorneys also provide an inadequate remedy for the harm alleged.

## V. *Declaratory Relief*

■ Contrary to County Defendants' contention, the Court concludes that declaratory relief is clearly appropriate in this case because there is an "actual controversy" regarding plaintiffs' right to legal counsel in deprivation cases. *See* 28 U.S.C. § 2201 ("In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought"). Although both sides agree that there is a statutory right to counsel in TPR proceedings, County Defendants deny that there is *any* right to counsel in general deprivation cases, while plaintiffs insist that they have both statutory and constitutional rights to counsel in such cases. Furthermore, County Defendants

and plaintiffs vigorously dispute whether plaintiffs have been denied effective assistance of counsel in either general deprivation cases or TPR proceedings. Clearly, therefore, there is a controversy between the parties regarding plaintiffs' rights that is sufficient to invoke the Court's jurisdiction to render declaratory relief.

### VI. *Public Policy*

 County Defendants argue that public policy considerations mandate that plaintiffs not be allowed to circumvent the Georgia legislature, which has sole authority to determine the appropriate amount of funding for child advocate attorneys. This argument is without merit. If this Court finds that plaintiff foster children's right to counsel is being violated, then it is the obligation of the Court to order an appropriate remedy even if such an order requires the state to appropriate additional funds to hire more child advocate attorneys. County Defendants cite no authority to the contrary.

*Summary*

For the foregoing reasons, the Court DENIES defendant Fulton County's motion for summary judgment [# 240–1] and DENIES defendant DeKalb County's motion for summary judgment [# 248–1].