**Charity ARMSTEAD, Woodrow Wilson Harrison, William Sills, etc., et al., Plaintiffs–Appellants,**

**v.**

**Gregory S. COLER, as Sec. of the Dept. of Health & Rehabilitative Services, State of Florida, A.H. Baldwin, as Asst. Sec. for Operations of the Dept. of Health & Rehabilitative, etc., et al., Defendants–Appellees.**

No. 89–3456.

United States Court of Appeals, Eleventh Circuit.

Oct. 15, 1990.

---

Marilyn G. Rose, Ft. Lauderdale, Fla., Susan C. Jamieson, Atlanta, Ga., Patricia A. Clare, James A. Heard, Jacksonville Area Legal Aid, Inc., Jacksonville, Fla., for plaintiffs-appellants.

John W. Hedrick, Asst. Gen. Counsel, Eric J. Taylor, Asst. Atty. Gen., Tallahassee, Fla., for defendants-appellees.

Before JOHNSON and HATCHETT, Circuit Judges, and SMITH *, Senior Circuit Judge.

JOHNSON, Circuit Judge:

This case arises from the district court's denial of plaintiffs' motion to amend final judgment.

## I. BACKGROUND

The Northeast Florida State Hospital ("NEFSH") is a state owned and operated institution for the mentally ill. Plaintiffs, appellants in this present appeal, are mentally retarded persons who reside at NEFSH or who did so at the time this suit commenced. At the time plaintiffs originally filed this suit, NEFSH was not staffed or equipped to offer appropriate care and habilitation for the mentally retarded. Defendants, appellees in this present appeal, are the Secretary of the Department of Health and Rehabilitative Services ("HRS") of the state of Florida and other HRS officials. HRS has overall responsibility for institutions and services provided to mentally retarded and mentally ill citizens of Florida.

The ten named plaintiffs originally filed suit on behalf of themselves and others similarly situated on February 28, 1984. Plaintiffs alleged violations of their rights under the Fourteenth Amendment, 42 U.S.C.A. § 1983, and section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794. The plaintiffs alleged that the defendants had confined them at NEFSH without providing them with appropriate care or habilitation and had denied them post-commitment review and access to judicial tribunals to challenge the legality of their confinement.

The district court originally certified the class on June 27, 1984, as all persons who are mentally retarded, not mentally ill, residing at NEFSH as of February 28, 1984, and all future mentally retarded, not mentally ill, residents of NEFSH. Upon plaintiffs' motion, the district court later amended the class definition to cover two subclasses: (1) the solely mentally retarded, and (2) those diagnosed as both mentally retarded and mentally ill. *Armstead v. Pingree*, 629 F.Supp. 273, 280 (M.D.Fla. 1986).

On October 29, 1987, HRS filed a motion to grant judgment for plaintiffs. On January 21, 1988, the plaintiffs filed a response along with their own motion for summary judgment. On February 8, 1989, the court granted judgment for the plaintiffs and set forth extensive findings of fact and conclusions of law. In its summary judgment order, the court denied "remedial" relief to

* Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

retarded persons who had been discharged or transferred out of NEFSH during the pendency of the litigation,[1] citing the Eleventh Amendment as a bar to such relief. The court also ordered HRS to submit a compliance plan within ninety days.

While awaiting the compliance plan, the plaintiffs filed a motion to amend the judgment so that it would, among other things, include the discharged patients in the relief granted. The court, however, denied that portion of the motion. The court eventually approved a modified version of the compliance plan, but again refused to include the discharged patients in the plan, declaring that such relief would exceed the scope of the action as it was filed and would violate the Eleventh Amendment bar on retroactive relief.

## II. DISCUSSION

■ The standard of review for the district court's denial of a motion to amend final judgment is abuse of discretion. *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 611 (11th Cir.1987); *Evans v. Bexley*, 750 F.2d 1498, 1500 (11th Cir.1985); *Thomas v. Farmville Mfg. Co.*, 705 F.2d 1307, 1307 (11th Cir.1983).

A. *Limitation of the Class Due Relief*

(1) The Complaint On Its Face

■ In its order granting summary judgment, the court set out as a finding of fact a description of the class: "Plaintiffs and class members are persons who are either solely mentally retarded or both mentally retarded and mentally ill, and who reside or were confined in NEFSH on or after February 20, 1984, or will reside or be confined therein in the future."[2] The original class certification order used similar language, defining the class as "[t]hose persons who ... were residing at [NEFSH] on February 28, 1984, and all future residents...." *Armstead*, 629 F.Supp. at 278. The words

"were confined in NEFSH on or after February 20, 1984" and "were residing at NEFSH" contemplate the possibility that some of the plaintiffs would be discharged prior to final judgment. On a literal reading, then, the court's factual finding includes in the class those members discharged between February 28, 1984, and the date of final judgment.

In its order approving the compliance plan, however, the district court clarified its understanding of the class entitled to relief. The court stated that patients who had been transferred out of NEFSH before final judgment were not members of the class entitled to relief. The court's primary justification for this refinement in class definition was that the plaintiffs' requested relief concerned conditions at the facility itself and not the specific conditions of individual class members.

The plaintiffs disagree with the district court's characterization of the relief requested in the amended complaint. The plaintiffs view the core allegations of the complaint as concerning the denial of services and post-commitment reviews to the individual class members. They point to paragraph 73 of the complaint, which requests that the court order appropriate placement of plaintiffs in facilities designed to provide habilitation, treatment, training, care, and services for the retarded. Paragraph 75 further requests that the court enjoin HRS from confining the retarded in any inappropriate facility. A plain reading of these two paragraphs of the complaint supports the plaintiffs' position, especially in view of the class definition.

HRS argues that Fed.R.Civ.P. 8 requires that the plaintiffs' complaint give the defendants fair notice of the claim and the grounds on which it rests. *See Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir.1977); *Feldman v. Jackson Memorial Hosp.*, 509 F.Supp. 815, 819 (S.D.Fla.1981),

---

**1.** It is not clear how many class members were discharged from NEFSH before entry of final judgment. HRS stipulated, however, that at least fifty-eight class members, including nine of the ten named plaintiffs, had been discharged as of May 1987.

**2.** The date of February 20 is apparently a typographical error. It should read "February 28," which is the date that plaintiffs originally filed the suit.

aff'd 752 F.2d 647 (11th Cir.), *cert. denied,* 472 U.S. 1029, 105 S.Ct. 3504, 87 L.Ed.2d 635 (1985). As HRS reads the complaint, there is no notice that the class or relief includes patients discharged or transferred during the pendency of the litigation. But in view of the fact that a plain reading of the complaint allows an interpretation which includes the discharged patients in the class receiving relief, HRS's argument is without merit.

### (2) The Four Walls of NEFSH

■ The heart of the disagreement between the parties concerns whether the relief requested, and that ultimately granted, focuses upon the institution of NEFSH or the individuals affected by the institution. HRS assumes that the relief is directed toward a place rather than a group of persons. HRS therefore asserts that individuals now not within the four walls of NEFSH are not entitled to relief because the complaint does not allege constitutional violations at a place other than NEFSH and does not link the defendants to any such violations outside the walls. HRS supports this assertion by pointing out that in order to sustain a section 1983 action a plaintiff must allege a constitutional wrong committed by the named defendant. *See, e.g., Williams v. Bennett,* 689 F.2d 1370, 1380 (11th Cir.1982), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983). HRS concludes that any claim for relief outside the four walls of NEFSH should have been dismissed because the plaintiffs never linked any constitutional wrongs committed outside NEFSH to the defendants.

Plaintiffs, on the other hand, characterize the claim as an allegation of wrongs against a group of persons (*i.e.,* the class) rather than NEFSH itself. As support for this position, the plaintiffs note that the relief actually granted to those residing at NEFSH on or after the date of final judgment was not limited to reform of conditions within the institution. That relief included: (1) detailed provisions as to appropriate placement of class members upon discharge from NEFSH, (2) the right to a hearing to contest the proposed placement, (3) an automatic hearing six months after discharge to any residential facility in order to evaluate the appropriateness of placement, and (4) a requirement that class members be deemed "involuntary" patients as long as they are in any state residential facility. The plaintiffs assert that the district court itself noted that the hearings ordered as part of the relief were necessary to prevent HRS from erroneously discharging from NEFSH those class members who were actually granted relief in the final judgment. The plaintiffs conclude that because relief attached to those individuals, and not the institution, there was no legitimate reason to exclude from relief persons who had been transferred out of the four walls of NEFSH during the pendency of the litigation.

We find persuasive on this point the Fourth Circuit's reasoning in *Thomas S. by Brooks v. Flaherty,* 902 F.2d 250 (4th Cir. 1990). That case was a class action challenging the deficient care of mentally retarded persons in North Carolina's psychiatric hospitals. In granting relief, the district court included among those entitled to relief all retarded persons transferred out of the hospitals after the date of class certification. The Fourth Circuit upheld the district court's decision, stating that if it were to hold otherwise "the state could unilaterally avoid the obligations imposed ... and defeat the claims of class members by terminating their institutional care while the case was pending." *Id.* at 255. This is essentially the same justification for continued class membership which the district court in the instant case recognized and implemented in its provisions for continued oversight of the appropriateness of placement after discharge from NEFSH for those to whom it granted relief. The district court erred, however, in failing to include the discharged and transferred patients within the ambit of that relief.

### B. *The Eleventh Amendment Bar*

■ The *Ex Parte Young* exception to the Eleventh Amendment allows a federal court to grant prospective relief against state officials in order to vindicate federal rights. *Ex Parte Young,* 209 U.S. 123, 28

S.Ct. 441, 52 L.Ed. 714 (1908). That exception, however, is not so broad as to allow a federal court to award retroactive relief against the state officials. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 103, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984). The district court in the instant case viewed relief for patients no longer residing at NEFSH as "remedial" in nature. The court, therefore, held such relief barred by the Eleventh Amendment.

Resolution of this issue turns on whether the relief for this group of patients should be termed prospective or retroactive. The plaintiffs, of course, claim it is prospective; the defendants maintain it is retroactive. Though the distinction between prospective and retroactive relief is not always easy to discern, it is clear that the relief which the *Ex Parte Young* exception allows must be equitable in nature. *Edelman v. Jordan,* 415 U.S. 651, 666, 94 S.Ct. 1347, 1357, 39 L.Ed.2d 662 (1974). The relief awarded, however, need not be completely without monetary impact on the state. *Id.* at 667, 94 S.Ct. at 1357. It is not the source of the funds that is important but whether funds are meant to compensate for *past* wrongdoing by the state or are merely ancillary to compliance with the court's prospective order. *Luckey v. Harris,* 860 F.2d 1012, 1014 (11th Cir.1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 2562, 109 L.Ed.2d 744 (1990).

The conceptual difficulty in applying the Eleventh Amendment to this case lies in the disagreement between plaintiffs and HRS over whether the relief requested is meant to attach to the institution or the individuals affected by it. If the suit concerns the institution, then relief for discharged patients would require HRS to expend funds to compensate the discharged patients for wrongs done them in the past. If the suit concerns the individuals, relief would require HRS to expend funds to ensure that they are not presently subject to inappropriate placement wherever they now reside. Presumably, under plaintiffs' view of the case, if these persons are now appropriately placed, they would follow the normal process outlined in the compliance order for termination of class membership and would be due no other compensation for any wrong suffered while residing at NEFSH.[3] Therefore, under the *Luckey* test, the Eleventh Amendment would bar relief only if this Court were to accept HRS's reading of the complaint as concerned solely with the institution itself. We do not accept that reading and therefore do not view the Eleventh Amendment as a bar to relief in the instant case.

## III. CONCLUSION

We AFFIRM the district court's judgment in all respects except its denial of relief to individuals discharged or transferred from NEFSH during the pendency of this litigation. As to those discharged or transferred individuals, we REVERSE the district court's denial of motion to amend judgment and REMAND with instructions to include these individuals appropriately within the order granting relief the court has already so ably crafted for the remainder of the class.

---

**3.** This was reasoning of the Fourth Circuit in *Thomas S.,* 902 F.2d at 255 (holding that the Eleventh Amendment was not a bar to relief for retarded patients discharged from state psychiatric hospitals prior to final judgment).