[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12172

_____

D.C. Docket No. 1:18-cv-00038-MW-GRJ

PETER MORGAN ATTWOOD,

Plaintiff – Appellee,

versus

CHARLES W. CLEMONS, SR.,

Defendant – Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(June 11, 2020)

Before JORDAN, GRANT, and DUBINA, Circuit Judges.

JORDAN, Circuit Judge:

Peter Attwood sued Florida Representative Charles W. Clemons, Sr. for blocking him on Twitter and Facebook. In response, Representative Clemons asserted Eleventh Amendment immunity and absolute legislative immunity and moved to dismiss the complaint. The district court denied those assertions of immunity and Representative Clemons now appeals. Because Representative Clemons is not entitled to either type of immunity at this stage of the litigation, we affirm.

**I**

The facts alleged in the complaint, which we accept as true, *see Hernandez v. Mesa*, 137 S. Ct. 2003, 2005 (2017), are as follows.

Mr. Attwood is a resident of Gainesville, Florida. He lives in District 21 of the Florida House of Representatives, where he is represented by Representative Clemons. Representative Clemons maintains Twitter and Facebook accounts which "make official statements, share information about legislative activities and other government functions, and [are used] to communicate with the public." D.E. 4 at 5.

On February 20, 2019, Mr. Attwood used his personal Twitter account to retweet a statement by a gun control activist. He linked the retweet to Representative Clemons' Twitter handle, asking the Representative to explain his vote on a recent motion to debate a bill concerning gun control. Representative Clemons then

blocked Mr. Attwood on Twitter.  Mr. Attwood also posted a comment on Representative Clemons' Facebook page, and Representative Clemons blocked him there too.

Mr. Attwood sued Representative Clemons in his official and individual capacities for declaratory and injunctive relief.  He asserted a federal claim under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments, and two state-law claims under Article I, §§ 4 and 5, of the Florida Constitution.  The complaint alleged that Representative Clemons unconstitutionally blocked Mr. Attwood from participating in public fora—Representative Clemons' public Twitter and Facebook accounts—based on his views.  And that restriction, according to Mr. Attwood, also hindered his ability to petition his government for a redress of grievances.

As noted, Representative Clemons moved to dismiss Mr. Attwood's claims. As relevant here, he argued that he was entitled to Eleventh Amendment immunity and absolute legislative immunity.

The district court denied the motion to dismiss.  It ruled that the exception to Eleventh Amendment immunity set out in *Ex parte Young*, 209 U.S. 123 (1908), is not limited to suits against those who implement or enforce state laws or policies, and extends to state officials who act unconstitutionally in their official capacities. "[Representative] Clemons controlled his Facebook and Twitter accounts," and so "he was responsible for the challenged action[s]."  D.E. 30 at 4. And because the

3

challenged actions were not legislative activities, Representative Clemons was not entitled to absolute legislative immunity. *See id.* at 5–6.

## II

In this interlocutory appeal, we review the denial of Eleventh Amendment immunity and absolute legislative immunity *de novo*. *See Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1334 (11th Cir. 1999) (Eleventh Amendment immunity); *Woods v. Gamel*, 132 F.3d 1417, 1419 (11th Cir. 1998) (legislative immunity). Eleventh Amendment immunity is an affirmative defense, and so is absolute legislative immunity. *See, e.g., Higgins v. Mississippi*, 217 F.3d 951, 953 (7th Cir. 2000) (Eleventh Amendment immunity); *Jackson v. City of Atlanta*, 73 F.3d 60, 63 (5th Cir. 1996) (absolute legislative immunity). As the "party claiming immunity from suit[,]" Representative Clemons "bears the burden of proof." *Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1296 (11th Cir. 2007) (en banc) (addressing an assertion of immunity at the motion-to-dismiss stage).

## III

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." Const. amend. XI. As interpreted by the

Supreme Court, this language bars a citizen from suing his state (or another state)—under federal or state law—unless the state waives its sovereign immunity or Congress abrogates that immunity under § 5 of the Fourteenth Amendment.  *See Hans v. Louisiana*, 134 U.S. 1, 10–15 (1890); *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72–73 (2000).[1]

The doctrine of *Ex parte Young*, however, is one exception to that bar.  *Ex parte Young*, 209 U.S. at 155–56, holds that "a suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment."  *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011).  *See also Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 255 (1011) ("[W]hen a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the state for sovereign-immunity purposes.").

To determine whether *Ex parte Young* permits a suit against a state official, we "need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized

---

[1] To the extent that Representative Clemons is being sued in his individual capacity under § 1983, there is no Eleventh Amendment bar.  *See Hafer v. Melo*, 502 U.S. 21, 3031 (1991) ("[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials.").  We therefore limit our discussion in this section to the official-capacity §1983 claim against Representative Clemons.

as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). *See also Stewart*, 563 U.S. at 255 (conducting the same "straight-forward inquiry"). Mr. Attwood's complaint satisfies this inquiry.

First, Mr. Attwood alleges an ongoing violation of the First Amendment. According to the complaint, Representative Clemons adorns his social media accounts with all the trappings of his state office. He uses the accounts to make official statements, to share information about legislative activities and government functions, and to communicate with the general public. *See* D.E. 4 at 5. He directs his Facebook followers to connect with him further through his official Florida House of Representatives contact information. *See id.* The posts and comments, moreover, are maintained according to the state's public records laws and are made available for public inspection. *See id.* at 6.

These allegations, taken as true and viewed in the light most favorable to Mr. Attwood, *see Weissman*, 500 F.3d at 1295, indicate that Representative Clemons is acting in his official capacity when he operates these social media accounts as an extension of his role in state office. As such, the social media accounts he operates may be a type of public forum under the First Amendment, and if so, Representative Clemons may not be allowed to exclude others based on their views. *See Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1930 (2019) ("When the government provides a forum for speech (known as a public forum), the government

6

may be constrained by the First Amendment, meaning that the government ordinarily may not exclude speech or speakers from the forum on the basis of viewpoint, or sometimes even on the basis of content."). Although we do not pass on the merits of Mr. Attwood's First Amendment claim in this interlocutory appeal, *see Verizon Md.*, 535 U.S. at 646, we note that two circuits have recently held that government officials can act in their official capacities when blocking persons from certain social media accounts related to their offices. *See Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226 (2d Cir. 2019) (concluding that President Trump acts in his official capacity when he tweets, and therefore violates the First Amendment when he blocks individuals from his Twitter account based on their views); *Davison v. Randall*, 912 F.3d 666, 680 (4th Cir. 2019) (holding that the chair of a county board of supervisors acted in her official capacity as a municipal official when she created and administered the chair's Facebook page and thus "acted under color of state law" when she banned an individual from that page).

Second, Mr. Attwood requests relief properly characterized as prospective. The complaint seeks a declaration that the Twitter and Facebook accounts are public fora and that Representative Clemons engaged in unconstitutional viewpoint discrimination by blocking him from those accounts. Mr. Attwood also seeks an injunction requiring Representative Clemons to unblock him. An injunction is necessarily prospective, and the Supreme Court has held that declaratory relief is

7

treated the same when it exposes the defendant to no more liability than an injunction. *See Verizon Md.*, 535 U.S. at 646 (noting that declaratory relief "seeks a declaration of the past, as well as the future," but is permitted under *Ex parte Young* because "[i]nsofar as the exposure to the State is concerned, the prayer for declaratory relief adds nothing to the prayer for injunction").

Representative Clemons nevertheless contends that he is entitled to Eleventh Amendment sovereign immunity. He argues that the suit is really against the Florida House of Representatives, that *Ex parte Young* only applies to those officials who are responsible for implementing and enforcing state laws and policies, and that he is "not a state officer who has authority to enforce or implement a law." *See* Appellant's Br. at 10-11, 14–16.

At this stage of the proceeding, Representative Clemons has not carried his burden of demonstrating that he is entitled to Eleventh Amendment immunity. As the district court correctly recognized, *Ex parte Young* is not as narrow as Representative Clemons maintains. "[I]t has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law," *Hafer*, 502 U.S. at 30 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974)), and Representative Clemons cites no cases limiting *Ex parte Young* in the way he proposes. Our own precedent indicates that the constitutional deprivation need not be pursuant to the

enforcement of a state law or policy; any act by a state official—as long as it is performed under color of state law—is sufficient. *See Luckey v. Harris*, 860 F.2d 1012, 1015 (11th Cir. 1988) ("All that is required is that the official be responsible for the challenged action."). Indeed, in *Armstead v. Coler*, 914 F.2d 1464, 1467–68 (11th Cir. 1990), we held that *Ex parte Young* permitted injunctive relief against Florida officials who had denied appropriate care and habitation to mentally disabled patients at a state hospital.

Mr. Attwood has alleged that Representative Clemons controls and maintains the Twitter and Facebook accounts at issue, made the (allegedly unconstitutional) decision to block him, and has the power to unblock him. Representative Clemons, who does not deny that he has control over the social media accounts and the power to unblock Mr. Attwood, is therefore a proper defendant under *Ex parte Young* for Mr. Attwood's § 1983 claim.

The concurrence argues that we should affirm the denial of Eleventh Amendment immunity on a different ground—that Mr. Attwood does not allege official capacity claims at all and seeks relief against Representative Clemons in only his individual capacity. We take no position on the concurrence's view. That issue has not been raised or briefed. Representative Clemons has never argued that the complaint states only individual as opposed to official capacity claims. In fact, Mr. Attwood and Representative Clemons argued both in the district court and on

9

appeal that the complaint states official capacity claims.  We take the case as it come

to us and as framed by the parties.  *See United States v. Sineneng-Smith*, 140 S. Ct.

1575, 1579 (2020) ("In our adversarial system of adjudication, we follow the

principle of party presentation.").  And there are no "extraordinary circumstances"

requiring us to take up the issue *sua sponte.  See id.* at 1581.  The parties and the

district court so far have agreed that the claims are against Representative Clemons

in his official capacity, and Representative Clemons is free to raise different

arguments on remand.[2]

## IV

Representative Clemons also asserts that he is entitled to absolute legislative

immunity.  *See* Appellant's Br. at 24–26.  We are not persuaded.

As a state legislator, Representative Clemons may assert absolute legislative

immunity.  *See Tenney v. Brandhove*, 341 U.S. 367, 373 (1951).  But asserting such

absolute legislative immunity and proving it are different things, because that

---

[2] Representative Clemons also argues that Mr. Attwood's official capacity state-law claims— which are based on the Florida Constitution—are barred by Eleventh Amendment immunity. *See* Appellant's Br. at 19–20.  Representative Clemons is correct that *Ex parte Young* is "inapplicable in a [federal] suit against state officials on the basis of state law." *Pennhurst State Sch. & Hosp. v. Alderman*, 465 U.S. 89, 106 (1984). *See e.g.*, *Hays Cty. Guardian v. Supple*, 969 F.2d 111, 125 (5th Cir. 1992) (holding that the Eleventh Amendment bars state-law claims against university officials in their official capacities).  But Mr. Attwood has represented in his brief that he is pursuing the state-law claims against Representative Clemons only as individual-capacity claims. *See* Appellant's Br. at 13.  We accept Mr. Attwood's concession and deem any state-law official-capacity claims abandoned for good.  We therefore need not address Representative Clemons' argument about those claims, and leave the individual-capacity state-law claims for the district court on remand.

immunity is confined to the activities that further an elected official's legislative duties. *See Brown v. Crawford Cty., Ga.*, 960 F.2d 1002, 1012 (11th Cir. 1992) ("Absolute legislative immunity extends only to actions taken within the sphere of legitimate legislative activity.") (quotations omitted). "The position of the individual claiming legislative immunity, then, is not dispositive. It is the nature of the act which determines whether legislative immunity shields the individual from suit." *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1062 (11th Cir. 1992). We have distinguished between acts that are legislative in nature and thus shielded (like voting, speechmaking on the legislative floor, committee reports, committee investigations and proceedings), and those that are not (like public distribution of press releases and newsletters, administration of penal facilities, and personnel decisions). *See id.* (collecting cases).

Representative Clemons' official Twitter and Facebook accounts are not legislative in nature; they are not "an integral part of the deliberative and communicative processes by which [elected officials] participate in committee and House proceedings." *Gravel v. United States*, 408 U.S. 606, 625 (1972). We agree with the district court that, based on the allegations in the complaint, the official Twitter and Facebook accounts are much more like the public distribution of a press release than a speech made on the floor of the assembly. *See Hutchinson v. Proxmire*, 443 U.S. 111, 133 (1979) (holding that a congressman's newsletters and

11

press releases "are not entitled to the protection of the Speech or Debate Clause"). Representative Clemons concedes that he "would not be entitled to immunity for the statements he makes on his social media pages," Appellant's Br. at 27, and if he is not entitled to immunity for what he says on Twitter and Facebook it is difficult to see how he is entitled to immunity for excluding persons from those same social media accounts. Because Representative Clemons' alleged conduct with respect to his Twitter and Facebook accounts was not legislative in nature, he is not entitled to absolute legislative immunity at this stage of the case.

Representative Clemons also says that his Twitter and Facebook accounts are private social media akin to a campaign website, and it would therefore violate his *own* First Amendment rights for a court to regulate his own speech. *See id.* at 24–26. We decline to address this argument because it goes to the merits of Mr. Attwood's First Amendment claim and not to Representative Clemons' assertion of absolute legislative immunity.

## IV

The district court did not err in rejecting, at this stage of the case, Representative Clemons' claims of Eleventh Amendment immunity and absolute legislative immunity.

**AFFIRMED.**

12

GRANT, Circuit Judge, concurring in part:

I agree with the majority about legislative immunity in this case. It is not available, so the individual capacity claim should go forward. I respectfully disagree, however, with the majority's conclusion that any official capacity claim exists to go forward. The complaint seeks declarative and injunctive relief against Clemons; specifically, it targets Clemons's actions on his social media accounts. Though the complaint states that its claims are against Clemons in his official as well as his individual capacity, that label is not enough. Painting stripes on a horse doesn't turn it into a zebra, and no matter how the plaintiff names his claims, they still are what they are. Because the complaint targets Clemons not as a proxy for the sovereign, but for personal conduct that will not be repeated by his successor-in-office, the suit involves only an individual capacity claim—and it is for that reason that Clemons may not invoke sovereign immunity.

I begin by noting why we need to parse out whether the plaintiff has brought both an official capacity and an individual capacity claim at this stage. The Supreme Court has, in the posture of reviewing a motion to dismiss, instructed that "courts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit." *Lewis v. Clarke*, 137 S. Ct. 1285, 1290 (2017). It makes sense that the Supreme Court has treated this question as a threshold inquiry: if the state employee is sued in his official capacity, then the action "is in essence against a State even if the State is not a named party," and the state is ordinarily "entitled to invoke the Eleventh Amendment's protection." *Id.* But if the sovereign would not be affected by the

13

suit, there is no need to consider whether *Ex parte Young* would allow the suit to go forward.  After all, under *Ex Parte Young*, a "suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011).  And that rule can only come into play after deciding whether or not a suit is in fact brought against a state official in his official, rather than only individual, capacity.

This inquiry, moreover, does not involve any factual determinations or credibility judgments; it is directed at the legal nature of the complaint's allegations, not at the factual truth of any of those allegations.  That is yet another reason this issue—whether the complaint alleges a claim that is "in essence" against the sovereign—is a threshold question that we should seek to answer before considering any exception to sovereign immunity.  And as the Supreme Court has recognized, "a question of immunity is separate from the merits of the underlying action for purposes of the *Cohen* test even though a reviewing court must consider the plaintiff's factual allegations in resolving the immunity issue." *Mitchell v. Forsyth*, 472 U.S. 511, 528–29 (1985).

Guiding our assessment, the Supreme Court directs that we "may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the

14

sovereign." *Lewis*, 137 S. Ct. at 1290.[1]  We ourselves have explained that a complaint caption indicating an official capacity claim "is—in and of itself—of little significance."  *Lundgren v. McDaniel*, 814 F.2d 600, 604 (11th Cir. 1987).  The "complaint itself, not the caption, controls the identification of the parties and the capacity in which they are sued."  *Welch v. Laney*, 57 F.3d 1004, 1010 (11th Cir. 1995).

And the capacity in which someone is sued makes a real difference.  A suit "against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1060 (11th Cir. 1992) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)).  So in "an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself."  *Lewis*, 137 S. Ct. at 1291.  That means an official capacity suit targets not the personal behavior of an official like Clemons, but his enforcement of, or action carrying out, a government policy.  And the result of such a suit, if successful, is that both the current officeholder and any future officeholder will be barred from carrying out whatever policy is at issue.

---

[1] The Supreme Court therefore has instructed us to make this determination as part of resolving an invocation of sovereign immunity, even though the party invoking sovereign immunity may well prefer to be sued in an official capacity.  That preference, of course, may mean that the party is unlikely to point out the absence of an official capacity claim.

15

By contrast, individual capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law." *Yeldell*, 956 F.2d at 1060 (quoting *Graham*, 473 U.S. at 165–66). And "to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* (quoting *Graham*, 473 U.S. at 166 (emphasis in original)). The "plaintiff in a personal-capacity suit need not establish a connection to governmental 'policy or custom.'" *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Graham*, 473 U.S. at 166–67). That means an individual capacity suit targets the individual behavior of an official like Clemons as he carries out his state duties. And a successful suit may result in an award of monetary damages, declarative relief, or injunctive relief to correct the constitutional violation.

I pause here to note a source of understandable confusion. Both individual capacity and official capacity claims brought under § 1983 require action "under color of state law"—meaning that both types of claims necessarily arise out of conduct that is connected in some way to the state employee's authority as a government official. But the mere fact that a state employee was acting under color of state law does not mean that a claim against that employee targets him in his official capacity. That is true even though—again, confusingly—the phrase "acted in an official capacity" is often used interchangeably with "acted under color of state law." So the term "official capacity" can mean one thing when describing the capacity in which an official acted, and another when describing the capacity in which the official is sued. *See Hafer*, 502 U.S. at 26.

16

That is a crucial distinction, but it is one that the majority opinion (like the district court opinion below) appears to elide. *See* Maj. Op. at 6–7 (stating that plaintiff's allegations "indicate that Representative Clemons is acting in his official capacity when he operates these social media accounts as an extension of his role in state office"). A "defendant acts under color of state law when she deprives the plaintiff of a right through the exercise of authority that she has by virtue of her government office or position." *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). "The dispositive question" in the color-of-state-law inquiry "is whether the defendant was exercising the power she possessed based on state authority or was acting only as a private individual." *Id.* But the "official" nature of a defendant's acts—which may resolve the under-color-of-state-law inquiry—does not determine whether a particular claim is against a defendant in his official capacity. Instead, we must analyze the complaint to determine whether the requested relief operates against the office the individual holds—or rather, against the individual himself.

*Hafer v. Melo* provides a useful guide. *See* 502 U.S. at 22–23. There, the newly elected auditor general of Pennsylvania fired eighteen employees shortly after assuming her position. *Id.* at 23. Several terminated employees alleged that Hafer fired them because of their political affiliation and filed suit seeking damages from her personally. *Id.* Hafer argued that because the suit concerned an official action—her decision to fire the employees—the suit must be against her in her official capacity. *Id.* at 26. It was in her interest to characterize the claim that way because an official capacity action for damages would have been barred. *See*

17

*Will*, 491 U.S. at 71 ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983.").  But the Supreme Court permitted the individual suit against Hafer to go forward, explaining that "the phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury."  *Hafer*, 502 U.S. at 26 (quoting *Will*, 491 U.S. at 71).

So the question of whether a government employee acted under color of state law is not a replacement for the question of whether the claim is targeted at the employee in an official capacity or in an individual capacity; action under color of state law is a requirement for either type of § 1983 claim.[2]  Only if the defendant acted under color of state law *and* the complaint seeks relief against the sovereign do we need to consider exceptions to sovereign immunity.  No sovereign means no sovereign immunity, and no sovereign immunity means no exceptions to sovereign immunity.

---

[2] Nor does this Court's decision in *Luckey v. Harris* allow us to sidestep that inquiry.  *See* 860 F.2d 1012, 1015 (11th Cir. 1988).  The majority opinion suggests that *Luckey* provides a clear rule permitting an official capacity suit on these facts.  Maj. Op. at 9 ("Our own precedent indicates that the constitutional deprivation need not be pursuant to the enforcement of a state law or policy; any act by a state official—as long as it is performed under color of state law—is sufficient." (citing *Luckey*, 860 F.2d at 1015)).  But the phrase from *Luckey* that the majority opinion relies on—"All that is required is that the official be responsible for the challenged action"—was a specific rejoinder to a specific argument.  *Luckey*, 860 F.2d at 1015.  In *Luckey*, a set of governmental defendants contended that they could not be sued for injunctive relief in their official capacities because they had not personally taken any action that violated the Constitution in the events that gave rise to the case (rather than, say, supervising others who actually took the illegal action).  *See id*.  Taken in context, then, the rule statement from *Luckey* does not move the needle in this case—it addresses whether official capacity claims can be brought against officials who haven't themselves taken any personal actions, not how to distinguish between individual capacity and official capacity claims against officials that everyone agrees have acted.

18

These first pages have admittedly been a lengthy wind-up; the doctrine distinguishing official capacity and individual capacity claims is complicated. But applying that doctrinal framework in this case leads to the conclusion that Clemons is targeted only in his individual capacity, not in his official capacity. The complaint shows that Clemons acted with authority connected to his position as a state representative when he operated his social media accounts and blocked the plaintiff from those accounts—this was, as the majority opinion notes, an "extension of his role in state office." Maj. Op. at 7. Because a "person acts under color of state law when he acts with authority possessed by virtue of his employment with the state," Clemons was acting under color of state law for purposes of the individual capacity § 1983 claim. *Almand v. DeKalb Cty.*, 103 F.3d 1510, 1513 (11th Cir. 1997).

But that does not mean the plaintiff's complaint targets Clemons as a proxy for the sovereign. The complaint seeks no relief from the office that Clemons holds, alleges no Florida House of Representatives policy or custom regarding representatives' social media accounts, and requests no remedy that will in any way operate against the Florida House of Representatives or any other state entity.

The only relief that the complaint seeks is a declaration and "an injunction requiring" Clemons to "unblock" the plaintiff from his "official Twitter and Facebook accounts" and prohibiting Clemons from "blocking Plaintiff or others from the @ChuckClemons21 Twitter and Facebook accounts on the basis of viewpoint in the future." Crucially, if Clemons were to leave office, it would make no sense to have his successor-in-office automatically assume his role in the

19

litigation.  The account at issue belongs to Clemons; it is not an account for whatever person happens to currently hold that office.  If Clemons were no longer a legislator, there is no reason to believe that Attwood would have any further interest in regaining access to Clemons's Twitter and Facebook accounts—and his successor-in-office would have no ability to manage those accounts in any event.

Even if Attwood succeeds, then, ordering his requested relief "will not require action by the sovereign or disturb the sovereign's property"—showing that this "is not a suit against [Clemons] in his official capacity."  *See Lewis*, 137 S. Ct. at 1291 (citation omitted).  Indeed, the only way we know that the complaint attempts to make an official capacity claim is that it says so in a single conclusory paragraph, and as we know from *Lundgren*, that is not enough.  *See* 814 F.2d at 604; *see also Lewis*, 137 S. Ct. at 1290.  Without more, the complaint does not contain an official capacity claim—and there is no need to consider whether *Ex parte Young* would nonetheless allow such a claim to go forward.

*Davison v. Randall*—cited approvingly in the majority opinion—shows why this is the right way to analyze these questions in this type of case.  *See* Maj. Op. at 7 (citing *Davison*, 912 F.3d 666, 680 (4th Cir. 2019)).  In *Davison*, the Fourth Circuit's opinion addressed a similar action against a government official (there, the chair of a county board of supervisors) for blocking a constituent from a social media account.  In that case, as in this one, the plaintiff sued the government employee in both her individual and official capacities.  912 F.3d at 676.  The Fourth Circuit affirmed a declaratory judgment against the government employee on the § 1983 individual capacity claim, explaining that the chair of a county board

20

acted "under color of state law" because she "created and administered the Chair's Facebook Page to further her duties as a municipal official" and used the Facebook page "as a tool of governance." *Id.* at 680 (citation omitted). The court also concluded that the Chair "engaged in unconstitutional viewpoint discrimination" when she banned a constituent from her County Chair Facebook page. *Id.* at 688.

But the Fourth Circuit then affirmed the district court's *dismissal* of the official capacity claim against the Chair. *Compare* Maj. Op. at 7 (describing *Davison* as holding "that government officials can act in their official capacities when blocking persons from certain social media accounts related to their offices"), *with Davison*, 912 F.3d at 690 (affirming the district court for "rejecting Davison's official capacity claim"). The court explained that while individual capacity suits "seek to impose personal liability upon a government official for actions" taken under color of state law, official capacity suits are treated as actions against the government entity itself. *Id.* at 688 (quoting *Graham*, 473 U.S. at 165). Because no policy or custom of the county board of supervisors played a role in the Chair's decision to block the constituent from her Facebook page, there was no official capacity claim; the claim was against the person, not the government. *Id.* at 689–90. *Davison* recognizes, then, that determining whether an official acted under color of state law does not answer the question of whether a plaintiff properly brought an official capacity claim.

While the complaint in this case plausibly alleges that Clemons acted under color of state law, I do not see how it alleges any claim against Clemons in his

21

official capacity.  For that reason, we may deny Clemons's invocation of sovereign immunity without considering *Ex parte Young*.

*        *        *

The intersection of politics, government, and social media has generated an increasing number of cases, and I trust that more are on the horizon.  It is thus crucial that we analyze these claims with precision.  Here, I would conclude that the plaintiff has sued Clemons in his individual capacity only.  Because his complaint does not actually raise an official capacity claim against Clemons as a proxy for the sovereign, only the individual capacity claim should survive.  I respectfully concur in the denial of legislative immunity, and otherwise find that no official capacity claim was presented for which sovereign immunity could be considered.